GIDEON C. DRAPER v. BYRON S. ASHLEY ET AL.

*Mortgage—Priorities—Subrogation.*

A first mortgage was foreclosed in chancery without making the second mortgagee a party. The land was bid in by the first mortgagees, one of whom conveyed his interest to his co-mortgagee, and he quitclaimed the land to the mortgagor, who had remained in possession upon an understanding that he should have an opportunity to secure money to redeem. The consideration was $2,500 due upon the first mortgage, $2,250 of which the mortgagor secured by mortgaging the land to a loan association, which supposed from the report of its attorney, who had examined an abstract of the title to the

land, that it was securing a first mortgage. And it is held
that in equity the making of the deed to the mortgagor and
the mortgage to the loan association should be regarded as
one transaction, and that the association is entitled to be sub-
rogated to the rights which the first mortgagee had when the
loan was made, at which time the second mortgagee had the
right to redeem from the foreclosure of the first mortgage, or
to foreclose his own mortgage, subject to the lien of the first
mortgage.

Appeal from Jackson. (Peck, J.) Submitted on briefs
February 12, 1895. Decided April 2, 1895.

Bill to foreclose a mortgage, and to declare complain-
ant's mortgage a first lien on the property, etc. Com-
plainant appeals. Decree affirmed. The facts are stated
in the opinion.

*Melville Stone,* for complainant.

*Henry E. Edwards* (*Wilson & Cobb,* of counsel), for
defendant Peninsular Building & Loan Association No. 2.

MONTGOMERY, J. Byron S. Ashley, being the owner of
certain premises in the city of Jackson, on the 15th of
June, 1886, executed a mortgage for the sum of $2,150 to
Frances J. Wall and William Duffany, which was recorded
on the same day. On the 14th of September, 1888, he
executed a second mortgage covering the same premises,
to Gideon C. Draper, for the sum of $970, which was re-
corded on the 27th of September, 1888. On the 19th of
February, 1889, Duffany and Wall filed a bill in chancery
to foreclose their mortgage, but did not make Draper a
party defendant. The sale was made on the 8th of March,
1892, and the premises were purchased by the mortgagees,
Duffany and Wall, for the amount of their mortgage, in-
terest, and costs,—$2,500.37. Wall subsequently quit-
claimed to Duffany, and on the 12th of April, 1892, Duf-
fany contracted to sell the premises back to the mortgagor,

Byron S. Ashley, who had continued in possession upon an understanding that he should have an opportunity to secure money to redeem. The contract was for the amount due upon the mortgage, of which Ashley paid down $250, agreeing to pay the balance on or before June 1, 1892. Upon the payment being made, Duffany executed to Ashley a quitclaim deed of the premises on the 6th of June, 1892. On the same day defendant Ashley and his wife executed a mortgage upon said premises to the Peninsular Building & Loan Association No. 2, to secure the sum of $2,250, advanced to them to assist in the purchase of the premises from Duffany. Prior to the execution of this mortgage, however, and before the deed had been made from Duffany to Ashley, Ashley had applied to the loan association for a loan upon the premises, and $500 had been advanced, and a mortgage for that sum had been executed by Duffany, apparently with the expectation that it would be subsequently taken up when Ashley should effect a loan for the larger sum. Prior to the execution of the deed from Duffany to Ashley, the attorney for the building and loan association, by the direction of the association, investigated the title. This he did by the examination of an abstract of title, and reported as follows:

"I have examined abstract for Ashley loan, and find the same correct down to April 6, 1892, and to William Duffany. We should have deed from Duffany to Ashley, and our mortgage discharged."

This reference was to the $500 mortgage which had been executed by Duffany to the association. The president of the association testified that, when the loan was made, he understood that Duffany and Wall had acquired a good title to the land under their foreclosure, and that such foreclosure operated to cut off all previous mortgages. The attorney who made the investigation testified that he

104 MICH.—34.

represented the association both at the time the loan in question was made, and also at the time the loan to Duffany was made; that the examination which he made of the title was from an abstract, which was offered in evidence, and from which, he testifies, it appeared that the Draper mortgage had been entirely cut off; that he made no examination of the files in the register's office to determine whether all the parties in interest had been made parties to that foreclosure, and he knew of no claim that Draper made upon the property until the time of the commencement of the present suit; that he recommended the loan to the association on the ground that the Duffany and Wall foreclosure had been regular.

Default having been made by Ashley upon the mortgage executed to the association, proceedings were commenced to foreclose by advertisement. Thereupon Draper filed his present bill of complaint to foreclose his own mortgage, to restrain the foreclosure of the mortgage of the building and loan association, and to have his mortgage declared a first lien upon the property, and entitled to priority over the mortgage of the building and loan association. The loan association filed an answer in the nature of a cross-bill, asking that its mortgage be declared entitled to priority, and that the property be sold to satisfy the amount due thereon. A decree was granted in accordance with the prayer of the cross-bill, and complainant appeals.

The failure of Wall and Duffany to make the complainant a party to the foreclosure proceedings instituted by them left with the second mortgagee the right to redeem from the first mortgage (2 Jones, Mortg. 1425, 1431; *Avery v. Ryerson,* 34 Mich. 362); and, had the mortgage to the building and loan association been executed by Wall and Duffany, there would have been little difficulty in saying that the association was subrogated to the rights of the first mortgagees, and was entitled to priority over the com-

plainant. But a question of greater difficulty is presented by reason of the fact that there was a conveyance to Ashley, whose duty it was to pay the complainant's mortgage. It is clear that, as between Ashley and the complainant, complainant's lien would become a first mortgage; and, as a general rule, one who pays off a prior incumbrance, and takes a new security for the advance, is not entitled to priority over an intervening incumbrance. See *Mather v. Jenswold,* 72 Iowa, 550; *Building & Loan Association v. Scott,* 86 Id. 431; *Kitchell v. Mudgett,* 37 Mich. 81. But we think that in equity the making of the deed from Duffany to Ashley and the mortgage to the loan association should be regarded as one transaction. There can be no doubt that the loan association supposed that it was obtaining a first security upon this land, and under these circumstances we think it is no hardship to hold that the association is entitled to be subrogated to the rights which Duffany had at the time of the loan. At this date, the rights of the complainant were, as above indicated, clearly defined. This gave him the right to redeem from the foreclosure of Duffany and Wall, or to foreclose his own mortgage, subject to the prior lien of Duffany and Wall. No hardship has resulted to him, that the security of the prior mortgage has been in effect transferred to the building and loan association, whereas, if it should be held that the mortgage of the association was subject to the complainant's mortgage, it would be directly against the equities of the parties, as well as against their manifest intention.

The circuit judge was of the opinion that the officers of the association had been guilty of no laches in receiving this mortgage supposing it to be a first lien, and we think the facts shown by the record justify that conclusion.

The decree of the court below will be affirmed, with costs.

The other Justices concurred.